UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 5:21-CR-00434-M-009

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| vs. | **SENTENCING MEMORANDUM** |
| AMBER DAWN CROSS,<br>     Defendant. | |

NOW COMES the defendant, Amber Cross, by and through counsel, and respectfully submits this sentencing memorandum in support of her request for a downward variance from her advisory guideline range. Ms. Cross submits she qualifies for the safety value pursuant to 18 U.S.C. § 3553 (f) and U.S.S.G. § 5C 1.2. As such the statutory mandatory minimum is no longer applicable. Further, a reasonable sentence which is "sufficient but not greater than necessary" to achieve the factors of 18 U.S.C. § 3553(a) can be achieved in Ms. Cross's case with a punishment which is below her advisory guideline range.

### Background

On January 10, 2022, Amber Cross was indicted for Conspiracy to Distribute and Possession With Intent to Distribute 50 Grams or More of Methamphetamine (Count1), Distribution of 50 Grams or More of Methamphetamine and Aiding and Abetting (Count 6). On November 1, 2022, Ms. Cross entered guilty pleas to Counts 1 and 6 of a superseding indictment pursuant to a written plea agreement with the government. The presentencing report (hereinafter "PSR") recommends an advisory guideline range of 30 to 37 months in this case (PSR ¶ 71).

1

## Facts

An uncontested fact in the PSR is that Ms. Cross played a minimal part in the drug distribution and other illegal Pagan motorcycle club (PMC) activities. Her participation came at the direct request of Christopher Baker, who she initially viewed as her friend. The one drug delivery she made for Mr. Baker, she did not know the amount of drugs she was delivering and forwarded the money she collected onto Mr. Baker. Most of her interaction with Mr. Baker and other members of the PMC came from a misplaced feeling of friendship. Mr. Baker initially pretended to be a friend to Ms. Cross to get close to her and cheat her out of the money she received from an accident settlement. He called them short loans she was giving to the club which he never repaid.

## Mitigation Discussion

Factors in this case the Court can consider under 18 U.S. C. § 3553(a) are Ms. Cross's two traumatic brain injuries suffered, the care she provides for her father, and the extensive cooperation Ms. Cross provided to the government in the prosecution of the co-defendant.

Amber Cross was born in Greensboro, North Carolina to parents, Joseph Cross and Kathy Anne Cross. Ms. Cross's first traumatic brain injury occurred on August 9, 2008. At age 17, Ms. Cross was operating a four wheeler on the side of the road when she was struck by a minivan. Ms. Cross was thrown from the four wheeler into an embankment on the side of the road ultimately landing in the below creek. She was in a comma at UNC Chapel Hill Hospital for five (5) months, and in a wheelchair for eight (8) months thereafter. As a result of this accident, Ms. Cross is now deaf in her left ear and without her ability to taste and smell. This accident also greatly affected her cognitive functions, as she was scoring at a first grade level after the accident. Ms. Cross struggled to keep up with school and her parents efforts to home school her were unsuccessful. The effects of

this accident ultimately lead to Ms. Cross to drop out of high school in the tenth grade. Ms. Cross's second traumatic brain injury occurred on June 2, 2020. She was riding on the back on a motorcycle when her and the driver were run off the road, throwing her headfirst into a tree. She was airlifted to UNC Chapel Hill Hospital following this accident where she suffered, six (6) broken ribs, a broken ankle, fractured wrist, a torn rotator cuff as well has a fractured 5th vertebrae in her back. She was in the intensive care unit for 4 days with brain bleeding. After being moved out of the ICU, Ms. Cross was hospitalized for another ten days due to the injuries sustained in this accident. As a result of the second traumatic brain injury, Ms. Cross's doctors estimate her brain will never go past the developmental age of fourteen (14) years old. Therefore, Ms. Cross will never have the ability to live independently. She is 32 years old and has never lived anywhere but with her parents. In addition to the permanent effects these brain injuries have caused, Ms. Cross also suffers from anxiety, clinical depression and PTSD, which she receives on going treatment.

  In 2016, Ms. Cross lost her mother to cancer. Since her mother's passing, Ms. Cross has been the primary care giver in the home for her father. Her father suffers from a health condition with his lungs that prevent him from standing for longer than five (5) minutes. Due to this, Ms. Cross now cooks all their meals, performs most of the household maintenance and provides daily care for her father. In addition, twice a week she provides care for her niece after school while her sister works late. Any time Ms. Cross has to spend away from her father will not only gravely affect Ms. Cross's mental and physical health, it will take a toll on her father's wellbeing as well.

  Ms. Cross has aided the government by providing truthful and valuable information about her co-defendant. She met on multiple occasions face to face with law enforcement officers and prosecutors handling this case. She testified at the trial of Christopher Baker. All this was done voluntarily, as she made unprotected statements before counsel was assigned to assist her on the

3

case. Further, she provided cooperation knowing there would be a risk to her own personal safety and that of her family having been threatened with bodily harm by Christopher Baker in the past.

### Conclusion

Ms. Cross respectfully requests that the Court grant a variance and consider probation or in the alternative an intermediate punishment. The brain trauma she has suffered due to past accidents and the permanent damage she continues to live with, along with her role of caregiver to her father, and the extensive cooperation Ms. Cross has provided to the government in prosecution of Christopher Baker are all sentencing factors that the Court can consider when fashioning her punishment. The goals of § 3553(a) can be achieved in this case with a probationary sentence or in the alternative an intermediate punishment.

Respectfully submitted this the 1st day of February, 2023

/s/ Edd K. Roberts III
Edd K. Roberts III
Panel Attorney for Defendant
5 West Hargett Street, Suite 1100
P.O. Box 1608
Raleigh, North Carolina 27602
Telephone: 919-782-8115
Fax: 919-834-3343
Email: eddk@robertslawnc.com
N.C. State Bar No. 29418

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date shown below the foregoing Sentencing Memorandum was filed with the Clerk of Court using the CM/ECF system, which automatically sends email notification to Assistant United States Attorney Kelly Sandling

Respectfully submitted this the 1st day of February, 2023.

/s/ Edd K. Roberts III
Edd K. Roberts III
Panel Attorney for Defendant
5 West Hargett Street, Suite 1100
P.O. Box 1608
Raleigh, North Carolina 27602
Telephone: 919-782-8115
Fax: 919-834-3343
Email: eddk@robertslawnc.com
N.C. State Bar No. 29418